UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00016-JHM

ADA-ES, INC.                                                                    PLAINTIFF

V.

BIG RIVERS ELECTRIC
CORPORATION                                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [DN 59], Defendant's Cross-Motion for Partial Summary Judgment [DN 63], Defendant's Rule 56(d) Motion [DN63], and Plaintiff's Motion to Strike the Sur-Reply Portions of Defendant's Reply [DN 66]. Fully briefed, these matters are ripe for decision. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, Defendant's Cross-Motion for Partial Summary Judgment is **GRANTED**, Defendant's Rule 56(d) Motion is **GRANTED**, and Plaintiff's Motion to Strike is **DENIED**.

### I.  BACKGROUND

According to the Complaint, Plaintiff ADA-ES, Inc. ("ADA-ES") contracted with Big Rivers Electric Corporation ("Big Rivers") for the engineering, manufacturing, and delivery of equipment and materials for a Dry Sorbent Injection System ("DSI System"). [DN 20 ¶ 7]. Pursuant to a requirement of the Request for Quotes ("RFQ"), ADA-ES posted an irrevocable standby letter of credit in the amount of $807,651.00 through CoBiz Bank in Denver, Colorado, to serve as security for performance under the contract. [*Id.* ¶ 11]. In accordance with the contract, ADA-ES engineered, manufactured, and delivered a DSI System, which was incorporated into a power plant owned by Big Rivers. [*Id.* ¶ 13]. The purpose of the system was to inject a powdered

sorbent into the power plant system where exhaust gas is produced to bind with, capture, and sequester the pollutant, Sulfur Trioxide gas ("$SO_3$"), created from the burning of fuel. [*Id.*]. In other words, the DSI System was to be used to reduce $SO_3$ emissions to a specific level. [*Id.*].

According to the contract documents—the RFQ, the contract, and the purchase order [DN 63-1 ¶ 17]—"Performance Guarantee Test Procedures" were to be mutually agreed upon and provided by ADA-ES 75 days after notice to proceed was granted by Big Rivers. [DN 20 ¶¶ 14–15]. These procedures were to provide guidelines for Big Rivers' testing of the DSI System after delivery and installation. On or about January 8, 2016, ADA-ES provided Big Rivers with the DSI Performance Test Procedure. [DN 20-7]. Those guidelines were incorporated into the final protocol for the test program, named CleanAir Protocol. [DN 20-8, 9, 10].

In March 2016, after the DSI System was installed and the performance test guidelines were finalized, Big Rivers conducted its first performance test on the DSI System. [DN 20 ¶ 19]. Big Rivers claimed the system failed the test by failing to reduce the amount of $SO_3$ emissions to less than five parts per million (ppm)—the contractually agreed upon reduction—when a specified amount of sorbent was consumed under specified conditions. [*Id.* ¶ 20]. Thereafter, Big Rivers notified ADA-ES of the failed test. ADA-ES responded that "it disagreed with Big Rivers' conclusions about the test, and informed Big Rivers that the way to cure the alleged problem was to use the High Reactivity Hydrated Lime as called for in the Test Procedures and the CleanAir Protocol." [*Id.* ¶ 22]. Big Rivers conducted a second test in June 2016 using a sorbent it claimed satisfied the contract's requirement and informed ADA-ES that the system again failed the performance test. [*Id.* ¶ 23].

Based on the failed performance tests, Big Rivers issued a claim for damages in the amount of $605,458.78, "which constituted its quantification of damages and asserted a right to both actual

and liquidated damages for the same alleged performance breach." [*Id.* ¶ 24]. Big Rivers thereafter withheld $563,382.56 of contract payments. Additionally, Big Rivers withdrew the entire $807,651.00 letter of credit funds, using the same basis it used to justify the withheld contract payments. [*Id.* ¶ 27].

On May 11, 2017, ADA-ES filed an Amended Complaint alleging Fraud (Count I), Unjust Enrichment (Count II), Breach of UCC Warranties (Count IV), Breach of Contract (Count V), and seeking Declaratory Judgment as to seven claims (Count III). [DN 20 ¶¶ 35–77]. In July 2018, ADA-ES filed the instant Motion for Partial Summary Judgment requesting that this Court grant declaratory judgment in its favor as to two of the seven claims—the contractually-permissible damages and the contractually-required sorbent to be used in the DSI System. [DN 59 at 1]. Big Rivers responded opposing ADA-ES's Motion as to both claims, filing its own Motion for Partial Summary Judgment as to the contractually-permissible damages, and filing a Rule 56(d) Motion asking the Court to deny or defer ruling on ADA-ES's Motion as it pertains to the contractually-required sorbent until further discovery could be conducted. [DN 63]. ADA-ES filed in a single document its Reply in support of its initial Motion for Partial Summary Judgment, a Response to Big Rivers' Cross-Motion for Partial Summary Judgment, and its Response in opposition to Big Rivers' Rule 56(d) Motion. [DN 64]. In what would have been the final filing, Big Rivers filed its Reply in support of its Cross-Motion for Partial Summary Judgment and its Rule 56(d) Motion. [DN 65]. However, ADA-ES took issue with the substantive arguments made by Big Rivers' in its Reply. Accordingly, ADA-ES filed a Motion to Strike the portions of Big Rivers' Reply that, in its opinion, constituted a sur-reply. [DN 66]. Big Rivers responded that its Reply consisted only of appropriate arguments and, as such, requested that the Court deny the

drastic remedy sought by ADA-ES in its Motion to Strike. [DN 67]. The final brief in this long saga was filed November 9, 2018—ADA-ES's Reply in support of its Motion to Strike. [DN 69].

## II. STANDARD OF REVIEW AND LAW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

The Court will address first the Motion to Strike followed by the motions regarding partial summary judgment.

4

### A. ADA-ES's Motion to Strike Sur-Reply [DN 66]

Following Big Rivers' Reply pertaining to its Cross-Motion for Partial Summary Judgment and its Rule 56(d) Motion, ADA-ES filed a Motion to Strike the Sur-Reply Portions of that Reply. [DN 66]. ADA-ES contends that Big Rivers improperly asserted substantive arguments regarding whether the contract required high reactivity hydrated lime for performance testing in its Reply. [*Id.* at 1]. Specifically, ADA-ES argues that Big Rivers disguised substantive arguments as a Rule 56(d) Reply which instead should be used to show the Court why additional discovery is necessary prior to a summary judgment ruling—"a blatant effort to get the last word on ADA-ES's motion that had already been fully briefed." [*Id.* at 3–4]. ADA-ES requests that the Court strike the sur-reply portions of Big Rivers' Reply or, in alternative, allow oral argument on ADA-ES's Motion for Partial Summary Judgment. [*Id.* at 4]. Big Rivers responded that its Reply was clearly related to its Rule 56(d) Motion, specifically discussing the need for additional discovery on the type of lime sorbent to be used in the performance tests of the DSI System. [DN 67 at 3–7]. ADA-ES retorts that Big Rivers' Reply argued why it believed the contract unambiguously warrants a decision in its favor, an impermissible argument for a Rule 56(d) filing. [DN 69 at 1].

Big Rivers correctly notes that Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings. That Rule provides that "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Intern. Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal

citations omitted)). "Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F. 2d 819, 822 (6th Cir. 1953)). In this case, such a remedy is improper.

ADA-ES repeatedly mischaracterizes Big Rivers' Reply as containing new arguments. Specifically, ADA-ES takes issue with Big Rivers' argument concerning the sorbent used being in conformance with the specifications of the contract and the contention that the contract did not require a specific sorbent or sorbent provider for performance testing. [DN 66 at 3]. Both arguments appear in Big Rivers' initial Rule 56(d) Motion. [DN 63 at 4, 21]. Further, in its initial Motion, Big Rivers explains that it believes the evidence developed with additional discovery will show that "the parties' agreement contemplated the use of hydrated lime meeting specifications of the Contract" and that it used hydrated lime meeting those specifications during the performance testing. [*Id.* at 19–21; DN 63-1 ¶¶ 39–40]. Accordingly, ADA-ES had ample opportunity to respond to this argument and its use in the Reply is not new or prejudicial. As for Big Rivers' statements concerning the contract not requiring a specific sorbent or sorbent provider, it argues that it was necessary in order to explain how the phrase "high reactivity hydrated lime" remains ambiguous outside the context of a specific provider's line of products. [DN 67 at 6]. That argument's connection to a Rule 56(d) reply in this case is not evident to the Court. However, this line of argument was first raised in Big Rivers' initial motion [DN 63 at 4]. Consequently, ADA-ES is not prejudiced by its later inclusion in Big Rivers' Rule 56(d) reply and the striking of that argument is unnecessary.

Finally, and more broadly, ADA-ES takes issue with Big Rivers' framing its Reply in terms of why summary judgment is precluded. [DN 66 at 3]. However, Big Rivers correctly points out that such a framing is a prerequisite to showing why summary judgment is premature

and further discovery is warranted under Rule 56(d). [DN 67 at 6]. Additionally, because this same argument was clearly outlined in Big Rivers' initial Motion, ADA-ES is not prejudiced by the Reply and the Motion to Strike is unwarranted. Accordingly, ADA-ES's Motion to Strike is **DENIED**.

### B. Motions for Partial Summary Judgment

Having denied ADA-ES's Motion to Strike, the Court can now address the motions for partial summary judgment.

#### 1. Permissible Damages

Regarding recoverable damages under the contract, both parties seek partial summary judgment in their favor. [DN 59; DN 63]. ADA-ES claims that "the Contract unambiguously provides that liquidated damages capped at 10% of the Contract value is the exclusive remedy for a proven performance-based breach of the Contract." [DN 59 at 6]. That being the case, ADA-ES claims entitlement to summary judgment on its claim for declaratory relief that Big Rivers' "recovery for any purported performance-based breach of Contract is limited to liquidated damages capped at 10% of the Contract value." [*Id.*]. Big Rivers not only responded in opposition to ADA-ES's Motion, but it filed a Cross-Motion for Partial Summary Judgment concerning the same matter. [DN 63]. Therein, Big Rivers explained that the liquidated damages clause of the contract did not apply to the breach at issue in this case—a "make good" guarantee. [*Id.* at 9–12]. Accordingly, Big Rivers requested that this Court "deny ADA[-ES's] motion on this issue and, instead, grant Big Rivers' cross-motion for summary judgment." [*Id.* at 12].

The issues raised in both parties' motions for partial summary judgment are governed by principles of contract interpretation, a matter of state law. Under Kentucky law, "the construction and interpretation of a contract including questions regarding ambiguity are questions of law to

be decided by the Court[.]" *Hulda Schoening Family Trust v. Powertel/Kentucky Inc.*, 275 F. Supp. 2d 793, 794 (W.D. Ky. 2003) (citation omitted). "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *Logan Fabricom, Inc. v. AOP P'ship LLP*, No. 2004-CA-002410, 2006 WL 3759412, at *2 (Ky. App. Dec. 22, 2006). A court's analysis thus begins with a contract's four corners. *See 3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440 (Ky. 2005) (noting that when no ambiguity in a contract exists, a court should look "only as far as the four corners of the document to determine the parties' intentions"). As a rule, a contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *Am. Dairy Queen Corp. v. Fortune St. Research & Writing Inc.*, 753 F. Supp. 2d 675, 679 (W.D. Ky. 2010) (citation omitted).

"'[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (quoting *O'Bryan v. Massey-Ferguson, Inc., Ky.*, 413 S.W.2d 891, 893 (Ky. 1966)). If a contract is ambiguous, however, a court may "consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties[.]" *Wolf River Oil Co. v. Equity Grp.-Ky. Div., LLC*, No. 1:09-CV-00030, 2010 WL 427775, at *2 (W.D. Ky. Feb. 3, 2010) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

The fact that the parties disagree about a contract's interpretation does not mean that it is ambiguous. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 594 (6th Cir. 2001) (noting that "disputed issues of contractual interpretation can be resolved at summary judgment on the

8

basis that they are questions of law"); *see also Cantrell Supply, Inc.*, 94 S.W.3d at 385 (stating that "[t]he fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms"). Instead, a contract is ambiguous only "if it can be reasonably interpreted to support two different positions." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 865 (6th Cir. 2006). Once a court determines that a contract is ambiguous, "areas of dispute concerning the extrinsic evidence are factual issues" and contract construction becomes "subject to resolution by the fact-finder." *Rite Aid of Ky., Inc. v. Foursome Props., LLC*, No. 2010-CA-001199, 2011 WL 3516851, at *2 (Ky. App. Aug. 12, 2011).

Importantly, documents that are executed at the same time and concern the same subject matter should be read and construed together to ascertain the parties' intent. *See, e.g., ABCO-BRAMER, Inc. v. Markel Ins. Co.*, 55 S.W.3d 841 (Ky. Ct. App. 2001) (contracts must be construed as a whole and all writings that are part of the same agreement must be construed together); *Veech v. Deposit Bank of Shelbyville*, 278 Ky. 542 (Ct. App. 1939) (instruments that are part of the same transaction may be interpreted together in determining the parties' intent). In the present case, the parties' RFQ and contract concern the same subject matter and were executed by the parties in respective sittings. Also, the RFQ refers to the contract and vice versa. Therefore, they must be construed together. Additionally, the RFQ and contract expressly call for the creation of the Performance Test Procedures and CleanAir Protocol. Accordingly, those documents will also be construed together.

The relevant sections of the contract documents for a damages cap include both portions of the RFQ and the contract itself—§§ 1.22 and 7.1 as well as the Limitation Liability Provision of the RFQ and § 492000 of the contract. As previously mentioned, a contract is ambiguous only "if it can be reasonably interpreted to support two different positions." *Albert M. Higley Co. v.*

9

*N/S Corp.*, 445 F.3d 861, 865 (6th Cir. 2006). As a rule, conflicting clauses should be construed to harmonize with each other if harmonization can consistently and reasonably be done. 17A Am. Jur. 2d Contracts § 384; *see Int'l Union of Op. Eng. v. J.A. Jones Constr. Co.*, 240 S.W.2d 49, 56 (Ky. 1951). In this case, reading the relevant clauses together warrants a conclusion that the contract unambiguously provides no damages cap to the breach of contract claimed by Big Rivers.

The Court looks first at the provisions in the RFQ. The RFQ contains a definitions section which defines "Liquidated Damages" as "payments which the Contractor shall make to the Owner for the value of damages experienced by the Owner to compensate for additional operational experiences or missed delivery schedules defined within the Contract." [DN 59-3 § 1.22]. The next provision, found in the "Commercial Terms" section, is the provision relied upon by ADA-ES. Section 7.1 provides:

> Performance based Liquidated Damages will be calculated from the Bidder's submittal referenced in Section 492000 of the Engineer's Technical Specification. The following values will be the basis for final Liquidated Damages:
>     a. Hydrated Lime: $10,000 per pound per hour
>     b. Power Consumption: $8,600 per kilowatt hour
> Contractor's total liability for Performance based Liquidated Damages will be capped at 10% of the total Contract value. Performance based Liquidated Damages will be Owner's sole and exclusive remedy for Contractor's failure to meet performance guarantees.

[*Id.* § 7.1]. The final provision of the RFQ relevant to this inquiry concerns limitations on liability. Specifically, it provides:

> In no event will Contractor's liability to the Company for any and all claims, including property damages and personal injury claims, liquidated damages, make right work, and any other claims of any sort allegedly resulting from breach of contract, tort, or any other theory of liability exceed the amount of the initial purchase price paid to the Contractor for the Work giving rise to the claim.

[*Id.* at 39].

Now the Court turns its attention to the remaining relevant provision in the contract. Section 492000 provides information concerning "Performance Guarantees" of the DSI System. [DN 59-2 § 492000]. Importantly, the provision distinguishes between "Make Good" performance guarantees and DSI system guarantees which are subject to liquidated damages. [*Id.*]. The provision provides:

1. The following DSI system guarantees are 'Make Good' performance guarantees:
   a. Maximum $SO_3$ Emission Rate at air preheater outlet, ppm: 5.0 . . .
2. The following DSI System Guarantees are subject to Liquidated Damages. . . .
   (1) Hydrated lime consumption at Performance conditions, lb/hr: 2,475

[*Id.*]. Having laid out the relevant provisions, the Court can now address the reasonableness of the respective interpretations.

ADA-ES relies heavily on the commercial terms section of the RFQ, even more specifically on the text that provides "[c]ontractor's total lability for Performance based Liquidated Damages will be capped at 10% of the total Contract value. Performance based Liquidated Damages will be Owner's sole and exclusive remedy for Contractor's failure to meet performance guarantees." [DN 59-3 § 7.1]. Reading this provision without the context of the remaining provisions could lead a Court to the conclusion that the damages Big Rivers' sought were to be limited to ten percent of the contract value. However, such a reading is not in line with the principles of contract interpretation cited above. Instead, this provision must be read in conjunction with, and in the context of, the remaining relevant provisions. Doing so, reveals that ADA-ES's interpretation is unreasonable.

Section 492000 of the Contract makes clear that "make good" performance guarantees are distinct from those system guarantees that are subject to liquidated damages. [DN 59-2 § 492000]. This distinction is only made more evident after reading the definition of liquidated damages

included in the RFQ. [59-3 § 1.22]. That provision specifies that liquidated damages are those payments made by the Contractor to the Owner for additional operational expenses—for example, additional pounds of hydrated lime needed per hour to allow the DSI System to function properly. [*Id.*]. The failure to create a system that reduces $SO_3$ emissions, the breach alleged by Big Rivers, does not qualify as "additional operational expenses" under any reasonable interpretation. The proverbial nail in the coffin of ADA-ES's asserted interpretation comes with the limitations on liability provision of the RFQ. [*Id.* at 39]. That section clearly distinguishes between liquidated damages claims and make right work claims when limiting the Contractor's total liability. [*Id.*]. Reading these provisions in conjunction with the commercial terms section relied upon by ADA-ES convinces the Court that ADA-ES's interpretation is unreasonable. Instead, Big Rivers' offered interpretation, that the contract contains no damages cap for the breach of a "make good" guarantee, is the only reasonable interpretation.

Because a fact-finder could not reasonably find for ADA-ES, summary judgment is appropriate in favor of Big Rivers. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). ADA-ES's motion for partial summary judgment as to contractually-authorized damages for the alleged failure to produce an adequate DSI System is **DENIED** and Big Rivers' motion on the same matter is **GRANTED**.

### 2. Lime Quality

The final issue before the Court is whether ADA-ES is entitled to partial summary judgment on the issue of the quality of lime required by contract for the DSI System performance tests. The same principles of contract interpretation outlined above apply here. ADA-ES filed a Motion for Partial Summary Judgment requesting a declaration that the Contract required the use of high reactivity hydrated lime for the performance tests, and, because Big Rivers failed to use

high reactivity hydrated lime, it breached the contract. [DN 59 at 7–8]. Big Rivers responded disputing that it did not use the quality of lime specified in the contract, thus requesting that the Court deny ADA-ES's Motion. [DN 63 at 12–16]. In the alternative, Big Rivers moved, pursuant to Rule 56(d), for the Court to deny or defer ruling on the issue to allow further discovery. [*Id.* at 16–25].

As previously stated, where the terms of the contract are unambiguous, "[t]he construction, meaning, and legal effect of [the] contract is a matter of law for the court to decide . . . ." *Siemens Bldg. Techs., Inc. v. BTS, Inc.*, No. 00-688, 2002 WL 32097057, at *2 (W.D. Ky. Feb 1, 2002). A contract is ambiguous only "if it can be reasonably interpreted to support two different positions*." Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 865 (6th Cir. 2006). Regarding the provisions concerning the quality of hydrated lime to be used in the DSI System, it is evident that a conflict exists. The documents—the RFQ, the contract, the Performance Test Procedures, and the CleanAir Protocol—refer to hydrated lime, hydrated lime with specific enumerated characteristics, "enhanced" hydrated lime, and "high reactivity" hydrated lime as the required sorbent. The latter two terms are never defined by those documents. Therein lies the conflict.

Thus far, extrinsic evidence has not been submitted to aid the Court's interpretation of the contract. Big Rivers explains that the lack of extrinsic evidence is due to the filing of this Motion prematurely, before discovery can be conducted. That being the case, Big Rivers asks the Court to deny or defer ruling on ADA-ES's Motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. That rule provides that if a non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discover; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The burden is on the

13

party seeking additional discovery to demonstrate why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citing *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003)). "Bare allegations or vague assertions of the need for discovery are not enough." *Id.* at 887 (citation omitted). "In order to fulfill the requirements of Fed. R. Civ. P. 56[(d)], [a non-moving party] must state with 'some precision the materials [it] hopes to obtain with further discovery, and exactly how [it] expects those materials would help [it] in opposing summary judgment.'" *Id.* (*quoting Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)); *Sharkey v. FDA*, 250 Fed. App'x 284, 291 (11th Cir. 2007) (internal quotation marks omitted) ("A Rule 56[(d)] motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment.").

Big Rivers submits an affidavit which adequately demonstrates the need for additional discovery. Big Rivers, through affiant Robert Toerne, claims additional discovery will allow it an opportunity to develop several lines of evidence. [DN 63-1 ¶¶ 37–41]. Specifically, evidence regarding ADA-ES's internal understanding regarding the agreed upon sorbent, evidence that the term "highly reactive" was written out or subsumed by the contract, and evidence concerning the industry and trade usage of the relevant terms. [*Id.*]. Big Rivers explains that this additional evidence would help it prove that the parties mutually agreed that hydrated lime with specific enumerated characteristics, not "high reactivity" hydrated lime, would be used in the DSI System.

It is well-settled in the Sixth Circuit that "when the parties have no opportunity for discovery . . . ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)). As such, Big Rivers' Rule 56(d) Motion is **GRANTED** and

14

ADA-ES's Motion for Partial Summary Judgment as to the required sorbent is **DENIED** without prejudice.

IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

(1) The Plaintiff's Motion for Partial Summary Judgment is **DENIED**;

(2) The Defendant's Cross-Motion for Partial Summary Judgment is **GRANTED**;

(3) The Defendant's Rule 56(d) Motion is **GRANTED**;

(4) and the Plaintiff's Motion to Strike is **DENIED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., District Judge
United States District Court

January 24, 2019

cc: counsel of record