UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00047-HBB

ADA-ES, INC.                                                                                         PLAINTIFF

VS.

BIG RIVERS ELECTRIC CORPORATION                                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion of Plaintiff ADA-ES, Inc., DN 82, for a protective order. Defendant Big Rivers Electric Corporation has responded in opposition at DN 86 and ADA-ES has replied at DN 89.

### Background

The Court has previously summarized the background of this suit in its Memorandum Opinion and Order at DN 77, wherein it ruled on the parties' motions for partial summary judgment. The Court summarized the case as follows:

According to the Complaint, Plaintiff ADA-ES, Inc. ("ADA-ES") contracted with Big Rivers Electric Corporation ("Big Rivers") for the engineering, manufacturing, and delivery of equipment and materials for a Dry Sorbent Injection System ("DSI System"). (DN 20 ¶ 7). Pursuant to a requirement of the Request for Quotes ("RFQ"), ADA-ES posted an irrevocable standby letter of credit in the amount of $807,651.00 through CoBiz Bank in Denver, Colorado, to serve as security for performance under the contract. (Id. ¶ 11). In accordance with the contract, ADA-ES engineered, manufactured, and delivered a DSI System, which was incorporated into a

power plant owned by Big Rivers. (Id. ¶ 13). The purpose of the system was to inject a powdered sorbent into the power plant system where exhaust gas is produced to bind with, capture, and sequester the pollutant, Sulfur Trioxide gas ("$SO_3$"), created from the burning of fuel. (Id.). In other words, the DSI System was to be used to reduce $SO_3$ emissions to a specific level. (Id.).

According to the contract documents—the RFQ, the contract, and the purchase order (DN 63-1 ¶ 17) "Performance Guarantee Test Procedures" were to be mutually agreed upon and provided by ADA-ES 75 days after notice to proceed was granted by Big Rivers. (DN 20 ¶¶ 14–15). These procedures were to provide guidelines for Big Rivers' testing of the DSI System after delivery and installation. On or about January 8, 2016, ADA-ES provided Big Rivers with the DSI Performance Test Procedure. (DN 20-7). Those guidelines were incorporated into the final protocol for the test program, named CleanAir Protocol. (DN 20-8, 9, 10).

In March 2016, after the DSI System was installed and the performance test guidelines were finalized, Big Rivers conducted its first performance test on the DSI System. (DN 20 ¶ 19). Big Rivers claimed the system failed the test by failing to reduce the amount of $SO_3$ emissions to less than five parts per million (ppm)—the contractually agreed upon reduction—when a specified amount of sorbent was consumed under specified conditions. (Id. ¶ 20). Thereafter, Big Rivers notified ADA-ES of the failed test. ADA-ES responded that "it disagreed with Big Rivers' conclusions about the test, and informed Big Rivers that the way to cure the alleged problem was to use the High Reactivity Hydrated Lime as called for in the Test Procedures and the CleanAir Protocol." (Id. ¶ 22). Big Rivers conducted a second test in June 2016 using a sorbent it claimed satisfied the contract's requirement and informed ADA-ES that the system again failed the performance test. (Id. ¶ 23).

Based on the failed performance tests, Big Rivers issued a claim for damages in the amount of $605,458.78, "which constituted its quantification of damages and asserted a right to both actual and liquidated damages for the same alleged performance breach." (Id. ¶ 24). Big Rivers hereafter withheld $563,382.56 of contract payments. Additionally, Big Rivers withdrew the entire $807,651.00 letter of credit funds, using the same basis it used to justify the withheld contract payments. ( Id. ¶ 27). On May 11, 2017, ADA-ES filed an Amended Complaint alleging Fraud (Count I), Unjust Enrichment (Count II), Breach of UCC Warranties (Count IV), Breach of Contract (Count V), and seeking Declaratory Judgment as to seven claims (Count III). (DN 20 ¶¶ 35–77).

ADA-ES' Motion for a Protective Order

ADA-ES' motion seeks protection from producing information related to "performance curves." As earlier noted, the objective of the DSI System was to reduce the amount of $SO_3$ released into the atmosphere by injecting a powdered sorbent into the system which would bind with and capture the $SO_3$. ADA-EX explains that it has trade-secret algorithms which help it predict how much sorbent is needed to remove a toxin under various conditions. Using these algorithms allows ADA-ES to graph performance curves. Because different sorbents have different performance features, the performance curves allow ADA-ES to compare options. ADA-ES describes the proprietary nature of the algorithms as being analogous to the "source code" for a computer program.

In this instance, ADA-ES states that the contract called for it to produce performance curves and testing protocols. ADA-ES created the curves by inputting data, which it obtained largely from Big Rivers, into the proprietary algorithms. Big Rivers has now submitted discovery requests calling for all documents related to the methods and calculations of the performance

curves, as well as similar information for the creation of performance curves for other DSI systems designed by ADA-ES. ADA-ES states that it has responded to the request except for six spreadsheets which it has withheld. These spreadsheets contain information that "reflect and contain ADA-ES' highly confidential algorithms – the methods and calculations underlying the creation of the performance curves" (DN 82, p. 2).

ADA-ES advances two arguments in support of its request for a protective order. First, it argues that the algorithms are not relevant to the issues in the case. ADA-ES explains that, in accordance with the contractual agreement, it utilized data largely provided by Big Rivers and provided performance curves and testing protocol, which Big Rivers accepted and were incorporated into the CleanAir Protocol. As such, ADA-ES characterizes the issue to be resolved in the case as a narrow one: "did the CleanAir Protocol require the use of basic hydrated lime or High Reactivity Hydrated Lime?" (DN 82, p. 5). ADA-ES contends that, while Big Rivers argues that the underlying calculations and methods involved in creating the performance curves are relevant to demonstrating whether ADA-ES's system could meet the performance target for $SO_3$ emission reduction, the requested information cannot answer the question. "One would never use predictive performance curves to determine whether a DSI System that had actually been installed could meet a performance guarantee" (Id. at p. 6). Moreover, ADA-ES asserts that the information does nothing to further Big Rivers' quest to determine the meaning of "High Reactivity Hydrated Lime" because the algorithms reveal nothing about the meaning of the product name.

ADA-ES's second argument is that the algorithms are trade secret information entitled to protection under the Kentucky Uniform Trade Secrets Act, KRS 365.880 *et seq.*, which defines a "trade secret" as information that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily

4

> ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

KRS 365.880(4).

In support of this argument, ADA-ES has tendered the affidavit of Ted Sanders, General Counsel for ADA-ES, who avers that he has personal knowledge of the trade secret issue. He notes that the algorithms were created by ADA-ES from an investment of significant time, expense and research over decades. The algorithms permit ADA-ES to create precise performance guarantees and competitively bid on projects. This has allowed it to secure approximately 200 sales of custom, multi-million-dollar sorbent injection systems. Mr. Sanders explains that the algorithm information is maintained confidentially on a password protected hard drive that is separate from ADA-ES's computer system and, were the information to become available to its direct competitors, would work an economic injury to ADA-ES. He makes specific note that Big Rivers retained its competitor Clyde Bergemann Power Group to provide remediation work on the project in question. He asserts that, were Bergemann Power Group allowed access to the information, it could incorporate "the information into their designs to create better, more efficient systems, or by enhancing the competitiveness of its bids on future projects" (DN 82-1, p. 4).

## Big Rivers' Response

Big Rivers disputes that this case turns on the single issue of what type of lime the contract called for. Big Rivers notes that its counterclaim raises issues as to whether the DSI system was designed in a workmanlike manner and whether ADA-ES made material misrepresentations regarding the amount and type of reagent required to achieve the required $SO_3$ reduction. Big Rivers also argues that the algorithms are relevant to its challenge to ADA-ES's position that, had

the type of lime it claims was called for under the contract been used in the testing, the system would have performed as promised.

Big Rivers explains that the greatest concern it had in approaching the implementation of the DSI system was not the initial capital cost. Rather, the greatest concern was the ongoing operational cost in the form of the lime which would be continuously injected into the system as an expendable sorbent. Big Rivers states that it obtained three bids and that it selected ADA-ES's proposal because it guaranteed a reagent consumption rate well below the other bids. The DSI system failed to deliver the specified reduction in $SO_3$ emission, and Big Rivers notes that ADA-ES contends it did so because Big Rivers used "basic hydrated lime" rather than "High Reactivity Hydrated Lime." Big Rivers asserts that the algorithms are relevant to the question of whether ADA-ES's claim has a basis in fact. "ADA's equations may offer clarity regarding whether ADA's DSI System was competently designed, whether its performance guarantees were actually achievable, and whether ADA misled Big Rivers – either intentionally or accidently – when ADA made its performance promise. . . ." (DN 21, p. 8).

Big Rivers also challenges ADA-ES's claims that the algorithms are protected from disclosure as trade secrets. It contends that ADA-ES has made filings with the SEC indicating that the DSI System market has "dried up," and ADA-ES is transitioning into a refined-coal and chemical-additive company. This is verified, Big Rivers argues, by ADA-ES's financial data which demonstrates that design and installation of DSI Systems comprises a relatively small percentage of ADA-ES's revenues. Consequently, Big Rivers contends that disclosure of the algorithms at this point would not have a significant impact on ADA-ES's business interests. Moreover, Big Rivers points out that a protective order regulating confidentiality of the information is an option which would protect ADA-ES.

ADA-ES's Reply

ADA-ES challenges Big Rivers' contention that the algorithms may demonstrate if it misled Big Rivers regarding the performance guarantees by noting that Big Rivers has not plead a claim for misrepresentation, negligence or fraudulent inducement. ADA-ES also contends that Big Rivers has not asserted any affirmative defense that challenges the validity of the contract. To the contrary, ADA-ES points out that Big Rivers' counterclaim and affirmative defenses seek enforcement of the contract.

ADA-ES also disputes that the algorithms are relevant to the issue of whether the estimates of the type of reagent and amount of sorbent needed to meet the emission rate target were incorrect, thus making the performance guarantees inaccurate. Rather, ADA-ES argues that, with regard to the DSI System's ability to perform as expected, the proof lies not in the projections but in the actual system performance.

As to the trade secret issue, ADA-ES contends that the functionality of the algorithms is not so limited as Big Rivers represents. ADA-ES states that the value of the algorithms goes beyond the design and installation of DSI Systems and extends to the company's overall work "providing coal-related businesses with creative and cost-effective solutions in order to meet regulatory compliance, improve efficiency, lower costs and maintain reliability" (DN 89, p. 9). Moreover, ADA-ES notes that the algorithms provide it with the ability to predict the performance of its own sorbent products.

Discussion

Rule 26(b)(1) of the Federal Rules of Civil Procedure guides the evaluation of any discovery request. The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case. . ." Fed. R. Civ. P. 26(b)(1). The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

The Court determines if discovery is relevant to a party's claim or defense by reference to the complaint or counterclaim and the answer. Big Rivers' answer is at DN 49. In its Sixth Affirmative Defense (Id. at p. 16) Big Rivers pleads defense under the UCC for breach of warranties. The Seventh Affirmative Defense (Id.) pleads ADA-ES's breach of contract. The Eight Affirmative Defense (Id.) similarly pleads ADA-ES's breach of contract, as well as "negligence, willful, wanton and or intentional misconduct." In its counterclaim, DN 74, Big Rivers alleges that ADA-ES breached the contract to provide a DSI System that, while meeting the specification, would reduce $SO_3$ to 5 ppm (Id. at p. 12). In Count II, Big Rivers alleges that ADA-ES breached an express warranty to correct any deficiency resulting from defective materials, equipment or workmanship (Id. at p. 13). Count III alleges a breach of covenant of good faith and fair dealing (Id. at p. 14-15). Consequently, the undersigned is not persuaded that Big Rivers has not plead any affirmative defense or cause of action which could call into question whether the DSI System was properly designed.

Relevance means evidence which tends "to make the existence of any fact that is of consequence to the determination of the action more or less probable that it would be without the evidence." Ware v. Seabring Marine Indus., No. 04-418-JBC, 2006 U.S. Dist. LEXIS 8505, *4 (March 6, 2006 E.D. Ky.) (*quoting* Fed. R. Evid. 401). Here, the parties agree on key facts. First, that the DSI System did not perform to expectations. Second, that Big Rivers used "basic hydrated lime" in testing the system. ADA-ES says that Big Rivers used the wrong type of lime and that the test protocol called for "High Reactivity Hydrated Lime." Big Rivers disagrees and says that the properties of basic hydrated lime were specified in the agreement. This gives rise to two

8

disputed questions of fact. First, what type of lime was called for in the contract? Second, if the contract called for High Reactivity Hydrated Lime, and had Big Rivers used it, would the system have performed as required? ADA-ES argues, essentially, that "the proof is in the pudding" regarding the DSI System – it didn't work with basic hydrated lime. Consequently, ADA-ES contends that the only issue in the case is whether Big Rivers should have used High Reactivity Hydrated Lime to satisfy the testing criteria. But that argument assumes that, *if* Big Rivers had used High Reactivity Hydrated Lime the system would have performed *as predicted*. Since those predictions were based on ADA-ES's algorithms, Big Rivers is entitled to test their accuracy and whether the system could perform as required *even if* High Reactivity Hydrated Lime had been used. Consequently, the undersigned concludes that the algorithms are relevant to Big Rivers' claims and defenses, and therefore discoverable.

ADA-ES has made a persuasive argument that the algorithms are trade secrets as defined under the Kentucky Uniform Trade Secrets Act, KRS 365.880 *et seq*. Trade secret status does not, in and of itself, create an absolute privilege against discovery and courts employ limited protection of the information as a preferred remedy. Am. Air Filter Co., Inc. v. Universal Air Prods., L.L.C., No. 3:14-CV-665-TBR-LLK, 2015 U.S. Dist. LEXIS 80409, *4 (June 22, 2015 W.D. Ky.). KRS 365.888 makes clear that a protective order is an option which a court may employ to balance the need for confidentiality against the need for discovery. Under Fed. R. Civ. P. 26(c)(1)(G) a Court may impose a protective order for trade secrets specifying how they are revealed.

ADA-ES expresses concern that it would be exposed to harm "if it is forced to provide this information to Big Rivers' consultants, many of whom actually worked on this very DSI System" (DN 82, p. 9). ADA-ES supports this statement with the affidavit of Ted Sanders, who opines that "Big Rivers' experts could easily utilize ADA-ES' trade secret information to obtain an unfair

competitive advantage over ADA-ES in the industry by, among other things, incorporating the information into their designs to create better, more efficient systems, or by enhancing the competitiveness of its bids on future projects" (DN 82-1, p. 4). This is certainly a reasonable concern, but ADA-ES has not explained why there is no means of crafting an effective protective order which will allow Big Rivers the benefit of discovery while, at the same time, affording ADA-ES a reasonable level of protection.

## ORDER

WHEREFORE, the motion to ADA-ES for a protective order precluding discovery of the algorithms is DENIED. However, ADA-ES is entitled to entry of a protective order providing for confidentiality of the information produced. The parties are directed to confer and tender a mutually acceptable protective order in this regard. Should the parties be unable to reach an agreement within 20 days of this order, they are directed to contact the undersigned's Case Manager to schedule an in-person status conference.

Copies: Counsel