UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO: 4:18-CV-00016-JHM**

**ADA-ES, INC.**                                                                                  **PLAINTIFF**

**V.**

**BIG RIVERS ELECTRIC
CORPORATION**                                                                      **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant's Motion for Partial Summary Judgment [DN 124]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND**

According to the Complaint, Plaintiff ADA-ES, Inc. ("ADA") contracted with Big Rivers Electric Corporation ("Big Rivers") for the engineering, manufacturing, and delivery of equipment and materials for a Dry Sorbent Injection System ("DSI System"). [DN 20 ¶ 7]. Pursuant to a requirement of the Request for Quotes ("RFQ"), ADA posted an irrevocable standby letter of credit in the amount of $807,651.00 through CoBiz Bank ("Bank") in Denver, Colorado, to serve as security for performance under the contract. [*Id.* ¶ 11]. Importantly, the letter of credit, by its express terms, was governed by Colorado law. [*Id.* ¶ 5].

In accordance with the contract, ADA engineered, manufactured, and delivered a DSI System, which was incorporated into a power plant owned by Big Rivers. [*Id.* ¶ 13]. The purpose of the system was to inject a powdered sorbent into the power plant system where exhaust gas is produced to bind with, capture, and sequester the pollutant, Sulfur Trioxide gas ("$SO_3$"), created

from the burning of fuel. [*Id.*]. In other words, the DSI System was to be used to reduce $SO_3$ emissions to a specific level. [*Id.*].

According to contract documents—the RFQ, the contract, and the purchase order—"Performance Guarantee Test Procedures" were to be mutually agreed upon and provided by ADA 75 days after notice to proceed was granted by Big Rivers. [*Id.* ¶¶ 14–15]. These procedures were to provide guidelines for Big Rivers' testing of the DSI System after delivery and installation. On or about January 8, 2016, ADA provided Big Rivers with the DSI Performance Test Procedure. [DN 20-7]. Those guidelines were incorporated into the final protocol for the test program, named CleanAir Protocol. [DN 20-8, DN 20-9, DN 20-10].

In March 2016, after the DSI System was installed and the performance test guidelines were finalized, Big Rivers conducted its first performance test on the DSI System. [DN 20 ¶ 19]. Big Rivers claimed the system failed the test by failing to reduce the amount of $SO_3$ emissions to less than five parts per million (ppm)—the contractually agreed upon reduction—when a specified amount of sorbent was consumed under specified conditions. [*Id.* ¶ 20]. Thereafter, Big Rivers notified ADA of the failed test. ADA responded that "it disagreed with Big Rivers' conclusions about the test, and informed Big Rivers that the way to cure the alleged problem was to use the High Reactivity Hydrated Lime as called for in the Test Procedures and the CleanAir Protocol." [*Id.* ¶ 22]. Big Rivers conducted a second test in June 2016 using a sorbent it claimed satisfied the contract's requirement and informed ADA that the system again failed the performance test. [*Id.* ¶ 23].

Based on the failed performance tests, Big Rivers issued a claim for damages in the amount of $605,458.78, "which constituted its quantification of damages and asserted a right to both actual and liquidated damages for the same alleged performance breach." [*Id.* ¶ 24]. Big Rivers

thereafter withheld $563,382.56 of contract payments. Additionally, Big Rivers withdrew the entire $807,651.00 letter of credit funds, using the same basis it used to justify the withheld contract payments. [*Id.* ¶ 27].

On May 11, 2017, ADA filed an Amended Complaint alleging Fraud (Count I), Unjust Enrichment (Count II), Breach of U.C.C. Warranties (Count IV), Breach of Contract (Count V), and seeking Declaratory Judgment as to seven claims (Count III). [DN 20 ¶¶ 35–77]. On December 6, 2019, ADA moved for leave to amend its complaint and attached its proposed amended complaint. [DN 118; DN 118-9]. Big Rivers, in response, filed a Motion for Partial Summary Judgment on ADA's claims for fraud and breach of U.C.C. warranties—two claims related to the letter of credit asserted in the operative complaint. [DN 124]. Therein, Big Rivers explained that its opposition to ADA's Motion for Leave to Amend required it to brief the legal and factual issues related to the draw on the letter of credit. [*Id.* ¶ 7]. That being the case, Big Rivers stated "[t]hat discussion of letter of credit law [would] necessarily show that ADA's fraud and breach of U.C.C. warranties claims fail as a matter of law." [*Id.* ¶ 9]. Accordingly, Big Rivers sought, and was granted, the right to file a combined memorandum in opposition to ADA's Motion to Amend as well as in support of its independent Motion for Partial Summary Judgment on ADA's pending letter of credit claims. [DN 156; DN 124; DN 125].

Although the Court permitted Big Rivers' arguments regarding the Motion to Amend and Motion for Partial Summary Judgment to be filed together in a single memorandum, the Court addresses these two motions independently as they require the application of different standards of review.

Turning to the instant motion, Big Rivers argues that it is entitled to summary judgment on two of ADA's existing claims. [DN 124; DN 125]. Big Rivers' primary basis for its motion is the contention that its draw on the letter of credit was proper as a matter of law. [DN 125 at 41–49].

Accordingly, Big Rivers argues it is entitled to summary judgment. [*Id.*]. ADA responds that understanding Big Rivers' draw is not as simple as Big Rivers' briefing makes it seem. Further, ADA argues that questions of material fact pervade each of its claims such that summary judgment is improper. [DN 136].

## II.  STANDARD OF REVIEW AND LAW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III.  DISCUSSION

### A. Fraud (Count I)

ADA's first claim for relief alleges that Big Rivers "came into possession of the Letter of Credit Funds by making materially false and deceptive statements to the Bank." [DN 20 ¶ 36]. As support, ADA points to Big Rivers' statement in the draw request that ADA breached the contract and failure to cure. ADA claims this statement is untrue. [*Id.* ¶ 37]. Additionally, ADA's operative complaint alleges that Big Rivers is liable for making false statements by omission when it failed to mention that it had already withheld payments under the contract that would have reduced the amount it could claim, if any, against the letter of credit. [*Id.* ¶ 38]. Relatedly, ADA asserts that Big Rivers' draw far exceeded any amount of damages Big Rivers had asserted, or even ascertained, at the time. [*Id.* ¶ 41]. In its Response to Big Rivers' Motion for Summary Judgment, ADA reduces its fraud claim to two primary arguments—(1) that Big Rivers falsely represented to the Bank that ADA breached the contract and thereafter failed to cure its non-performance and (2) that by submitting the draw request for the entire letter of credit, Big Rivers misrepresented that the draw was being used to purchase substitute performance. [DN 136 at 41–43].

Big Rivers moves for summary judgment and claims that neither argument can sustain ADA's claim. [DN 124]. As to the argument that its statement to the Bank—that ADA breached the contract and failed to cure—can for the basis of a fraud claim, Big Rivers maintains that it was not a statement of material fact, as is required to prove fraud, but rather it was Big Rivers' legal opinion and conclusion regarding ADA's performance under the contract. [DN 125 43–44; DN 147 at 16–21]. And, as to the claim that Big Rivers misrepresented to the Bank that the draw was to purchase substitute performance, Big Rivers argues that ADA has no evidence that it made an affirmative statement to the Bank of what it intended to do with the funds. [DN 147 at 21]. Even if ADA did have such evidence, Big Rivers argues that it would constitute a forward-looking

statement of future intent that would be irrelevant to ADA's fraud claim. [*Id.*]. Big Rivers also maintains that ADA cannot prove any damage from Big Rivers' alleged misstatement.

In Colorado,

> a plaintiff seeking to prevail on a fraud claim must establish five elements: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff.

*Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citing *Vinton v. Virzi*, 269 P.3d 1242 (Colo. 2012)). ADA argues that Big Rivers is liable for fraud because it delivered a signed writing to the Bank which: (1) falsely stated that (a) ADA breached the contract and failed to cure and (b) that the draw was to purchase substitute performance; (2) which Big Rivers knew or should have known was false; (3) which was presented to the Bank in order to receive the Letter of Credit funds; (4) which was relied on by the Bank in paying on Big Rivers' demand; and (5) which resulted in a loss of approximately $807,651.00 to ADA.

As to Big Rivers' first argument—that the statement that ADA breached the contract and failed to cure was a statement of legal opinion—it is true that "[t]o be actionable as fraud, a misrepresentation must be of an existing or past material fact." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 153 (Colo. 2007) (citing *United Fire & Cas. Co. v. Nissan Motor Corp.,* 433 P.2d 769, 771 (Colo. 1967) (citations omitted)). That said, many courts have noted the difficulty in determining whether a particular representation is one of fact or opinion. As to this point, American Jurisprudence explained:

> [T]here is no certain rule which can be applied in order to determine when false representations constitute matters of opinion or matters of fact but that each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter in the light of the surrounding circumstances. Stated similarly,

> whether a statement is an actionable statement of fact or merely one of opinion often depends on the circumstances and context in which a statement is made, and among the relevant circumstances are the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future.

37 AM. JUR. 2D FRAUD AND DECEIT § 66.

The Colorado Supreme Court attempted to clarify this amorphous standard in *Brodeur v. Am. Home Assur. Co.* 169 P.3d 139 (Colo. 2007). There, the Court explained that "a representation of law is a statement of opinion as to what the law permits or prohibits, and cannot support an action for fraud." *Id.* at 153 (citing *Chacon v. Scavo,* 358 P.2d 614, 614 (Colo. 1960); *Metzger v. Baker,* 24 P.2d 748, 749 (Colo. 1933)). Further, "[a]s a mere statement of opinion, a representation of law may be correct or incorrect." *Id.* (citing *Metzger,* 24 P.2d at 749 ("The truth or falsehood of [a] representation [of law] can be tested by ordinary vigilance and attention.")).

The Court stated that "[a] statement concerning the law is a misrepresentation of fact if it involves 'statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal significance, but which are not part of the law themselves.'" *Id.* (quoting *Equal Justice Found. v. Deutsche Bank Trust Co. Am.,* 412 F. Supp. 2d 790, 795–96 (S.D. Ohio 2005); *see also Kunz v. Warren,* 725 P.2d 794, 797 (Colo. App. 1986) (holding that a broker's representation that real estate was an existing subdivision and lots were ready for sale while he knew the subdivision was only conditionally approved could support misrepresentation of fact)). In contrast, a misrepresentation of the law—an opinion, which cannot form the basis of a fraud claim—concerns "the legal meaning and effect of a statute, ruling, . . . or other source of law." *Id.* (quoting *Equal Justice Found.,* 412 F. Supp. 2d at 795–96; *see also Metzger,* 24 P.2d at 749 (holding that whether an ordinance existed and what it provided was a representation of law)).

Considering the above, the Court finds that Big Rivers' statement in the letter of credit draw request—that ADA breached its contract and failed to cure—is a statement of fact. This statement "impl[ies] the existence of accurate and readily ascertainable facts that . . . have legal significance[.]" *Equal Justice Found.*, 412 F. Supp. 2d at 795–96. The Court also finds that this statement was material, as "a reasonable person under the circumstances would attach importance to it in determining his or her course of action." *Rocky Mt. Expl., Inc. v. Graham*, 420 P.3d 223, 234 (Colo. 2018). In light of the evidence submitted to the record, the Court finds that a genuine issue of material fact remains as to whether Big Rivers' material statement of fact was false. Indeed, whether the contract was breached, and by whom, forms the basis of the parties' crossclaims for breach of contract. [DN 20 ¶¶ 71–77; DN 74 ¶¶ 68–75]. Further, a genuine issue remains concerning whether Big Rivers knew or should have known at the time of the draw that its statement was false.

Turning to the remaining elements, the parties do not dispute that the Bank received the statement and relied upon it in paying out the entire letter of credit. As to Big Rivers' intent, the issue of a party's intent is generally a question of fact not suitable for determination on summary judgment, but the Court does not believe that Big Rivers contests the fact that it made the statement to the Bank in order to trigger payment of the letter of credit. Finally, Big Rivers argues that ADA can show no damages based on the alleged misstatement. However, but for Big Rivers' statement to the Bank that ADA breached the contract and failed to cure, Big Rivers would not have been able to draw on the letter of credit in the first place. *See Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citing *Vinton v. Virzi*, 269 P.3d 1242 (Colo. 2012)).

ADA proposes a second basis for its fraud claim—that by submitting a draw request for the full amount of the letter of credit, Big Rivers misrepresented that the draw was to purchase

8

substitute performance. [DN 136 at 43]. ADA's actual pleading, however, states that "Big Rivers also made false statements by omission when it failed to mention that it had already withheld payments under the Contract that would have reduced the amount it could claim, if any, against the Letter of Credit." [DN 20 ¶ 38]. Big Rivers addresses each allegation in its briefing, so the Court does the same.

As to ADA's claim that by submitting a draw request for the full amount of the letter of credit, Big Rivers made a false representation of material fact that the draw was to purchase substitute performance, the Court is unconvinced. The argument misses the mark because there is no evidence that Big Rivers ever represented to the Bank, or to ADA, that it intended to use the letter of credit funds to purchase substitute performance. Additionally, none of the parties' documents concerning the letter of credit make Big Rivers' draw on the funds contingent upon their being used to purchase substitute performance. To the extent that ADA bases a fraud claim on Big Rivers' alleged misrepresentation as to what it planned to do with the letter of credit funds, that claim is dismissed.

Turning to ADA's Complaint allegation, the Court looks to Colorado cases considering fraud by omission. Indeed, in Colorado, there is a claim for fraud by omission. A party commits fraud by omission by "concealing material existing facts that in equity and good conscience ought to be revealed." *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 404 (Colo. Ct. App. 2003), *reversed in part on other grounds*, 112 P.3d 59 (Colo. 2005) (citing *Morrison v. Goodspeed*, 68 P.2d 458, 462 (Co. 1937)). Unfortunately for ADA, the Court can find no reason why Big Rivers would need, in equity and good conscience, to disclose to the Bank that it had already withheld payments under the contract. The documents relevant to the letter of credit contain no requirement that Big Rivers' draw be proportional to actual or realized damages, nor do the documents tie Big

9

Rivers' draw in any way to contract payments. ADA provides no support for this fraud by omission claim in its Response to Big Rivers' Motion for Summary Judgment, perhaps because it realizes the claim must fail. To the extent ADA asserts a fraud claim based on Big Rivers' failure to disclose to the Bank that it had already withheld contract payments from ADA, that claim is dismissed.

Still yet, as discussed above, construing the facts in a light most favorable to the non-moving party, the Court believes there remain genuine issues of material fact on ADA's fraud claim premised on the statement that ADA breached the contract and failed to cure. There is evidence that Big Rivers made that material, factual representation intending that the Bank act upon it by making payment upon the letter of credit. The parties' evidence reveals a factual dispute as to the falsity of the statement and whether Big Rivers knew or should have known that the statement was false. However, the Bank accepted the document presented and, in reliance on it, paid Big Rivers $807,651.00. Accordingly, ADA, who then was obligated to repay the Bank, suffered injury that was the proximate result of Big Rivers' representation. That being the case, Big Rivers' Motion for Partial Summary Judgment as to ADA's fraud claim is **GRANTED in part** and **DENIED in part**.

### B. Breach of U.C.C. Warranties (Count IV)

ADA's fourth claim for relief alleges that Big Rivers breached U.C.C. warranties when drawing on the letter of credit. [DN 20 ¶¶ 67–70]. Specifically, ADA claims that Big Rivers warranted to the Bank and ADA that there was no material fraud and no forgery, and it warranted to ADA that the drawing did not violate any agreement between the two parties. [*Id.* ¶ 68]. ADA argues that these warranties were breached "when [Big Rivers] fraudulently submitted documents containing materially false statements to the Bank in order to obtain a draw on the full amount of

the Line of Credit[.]" [*Id.* ¶ 69]. As to the second warranty, ADA claims that Big Rivers committed a material breach of the contract when Big Rivers drew the full amount of the letter of credit. [*Id.*].

Big Rivers moves for summary judgment and argues it breached neither of the U.C.C. warranties relied on by ADA. [DN 124; DN 125 at 46–49]. As to the charge of fraud, Big Rivers argues that it had more than a colorable right—the relevant benchmark for a fraud claim—to draw on the letter of credit. [DN 125 at 47–49]. As to the second warranty, Big Rivers maintains that ADA cannot point to any underlying contract provision which placed further restrictions on the letter of credit and which was violated by Big Rivers' total draw on the credit. [*Id.* at 46–47].

Colorado has adopted the U.C.C. and Article 5 concerns letters of credit. The warranties at issue here are those provided for in C.R.S. § 4-5-110. The first warranty concerns fraud or forgery and the second concerns draws that violate agreements between the applicant and the beneficiary. ADA claims both warranties were breached by Big Rivers' draw on the letter of credit. [DN 20 ¶¶ 67–70]. The relevant portion of the statute states:

> (a) If its presentation is honored, the beneficiary warrants:
> (1) To the issuer, any other person to whom presentation is made, and the applicant that there is no fraud or forgery of the kind described in section 4-5-109(a); and
> (2) To the applicant that the drawing does not violate any agreement between the applicant and beneficiary or any other agreement intended by them to be augmented by the letter of credit.

C.R.S. § 4-5-110(a). Section 109, referenced above, gives guidance to both issuers and applicants in the event that a presentation is made that appears on its face to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant. C.R.S. § 4-5-109(a). The Court addresses each warranty separately.

11

1. **Fraud or Forgery**

ADA alleges that Big Rivers' breached a U.C.C. warranty "when it fraudulently submitted documents containing materially false statements to the Bank in order to obtain a draw on the full amount of the Line of Credit[.]". [DN 20 ¶ 69]. Specifically, ADA argues that Big Rivers committed such fraud "when it told the Bank that ADA-ES had been provided a reasonable opportunity to cure and accused ADA-ES of abandoning the job." [DN 136 at 22]. Big Rivers argues that it is "beyond all reasonable dispute that Big Rivers had, at the very least, a colorable basis" for making the statements in the letter of credit that ADA challenges. [DN 147 at 6–9]. To be clear, this claim related to fraud is separate and distinct from ADA's common law fraud claim. *See* JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT: COMMERCIAL AND STANDBY CREDITS § 9.04 (2d ed) ("Breach of warranty and fraud are distinct causes of action with different elements and different measures of damages. The issuer that can prove breach of warranty may not be able to prove the scienter element of fraud.").

As has been written about extensively, letters of credit are separate and independent from underlying business transactions between a bank's customer—in this case, ADA—and the beneficiary of the letter of credit—in this case, Big Rivers. *Colo. Nat'l Bank v. Bd. of Cty. Comm'rs*, 634 P.2d 32, 36 (Colo. 1981). Because of the independent nature of letters of credit, an issuer—here, the Bank—is under a duty to honor the drafts for payment which conform with the terms of the letter of credit. This is done without reference to a beneficiary's compliance with the terms of the underlying contract. *Id.* at 36–37. "An exception to the bank's obligation to honor an apparently conforming draft or demand for payment is when a required document is, *inter alia,* forged or fraudulent, or there is fraud in the transaction." *Id.* at 37 (internal citations omitted); *see* C.R.S. § 4-5-109(a). Courts have generally thought the exception "to include an element of

intentional misrepresentation in order to profit from another." *Id.* at 39 (quoting *West Virginia Hous. Dev. Fund v. Sroka,* 415 F. Supp. 1107, 1114 (W.D. Pa. 1976)). ADA expressly does not challenge the Bank's release of the funds to Big Rivers. [DN 136 at 29]. However, this narrow exception allowing courts to refuse payment on a draw request also provides the basis for ADA's first breach of U.C.C. warranties claim—fraud in the draft presentation. *See* C.R.S. § 4-5-110(a)(1).

Colorado's codification of the U.C.C. warranty concerning fraud contains commentary explaining what is necessary to prove such a breach. The official comment states that "[m]aterial fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." C.R.S. § 4-5-109 cmt. 1. The same comment cites approvingly to cases from the Pennsylvania Supreme Court, the Third Circuit Court of Appeals, and the First Circuit Court of Appeals. *Id.* (citing *Intraworld Indus. v. Girard Trust Bank*, 336 A.2d 316 (Pa. 1975); *Roman Ceramics Corp. v. People's Nat'l Bank*, 714 F.2d 1207 (3d Cir. 1983); *Ground Air Transfer v. Westate's Airlines*, 899 F.2d 1269 (1st Cir. 1990)). As such, the Court considers those cases persuasive authority in assessing ADA's claim.

Looking at the evidence submitted, the Court finds that genuine issues of material fact remain on this claim. A reasonable person could very well look at the evidence submitted and find in favor of either party on the question of whether Big Rivers committed material fraud and thereby breached its U.C.C. warranty to ADA by making the statements in its draw request that ADA breached the contract and failed to cure. Though not dispositive, the Court finds additionally persuasive a case from the Tenth Circuit, considering an appeal from an Oklahoma district court.[1]

---

[1] Oklahoma, like Colorado, has adopted Article 5 of the U.C.C. While the Tenth Circuit decision concerns an earlier iteration of the relevant U.C.C. provision, the Court finds the conclusion similarly persuasive as to the more recent codification.

13

The Tenth Circuit in *Ward Petroleum Corp. v. Federal Deposit Ins. Corp.*, stated that whether fraud occurred "appears to present a factual question which cannot be resolved on summary judgment." 903 F.2d 1297, 1301 (10th Cir. 1990) (citing *Banque Paribas v. Hamilton Indus. Int'l, Inc.*, 767 F.2d 380, 385 (7th Cir. 1985); *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 686 (2d Cir. 1983)). The Court finds that granting Big Rivers' motion would be improper. That said, several of Big Rivers arguments are worth discussing for the sake of clarity.

Big Rivers makes a big to-do about the Court's January 25, 2019, Memorandum Opinion and Order. [DN 125 at 5, 8–9, 17–18, 33, 48; *see also* DN 77]. Big Rivers argues that the opinion found the contract documents ambiguous. Big Rivers contends that the ambiguity makes clear that it had, at the very least, a colorable basis for drawing on the letter of credit, and thus ADA's breach of U.C.C. warranty claim must fail. In the January opinion, the Court noted that the contract documents refer to four different types of hydrated lime as the required sorbent and recognized that conflict. [DN 77 at 13]. The Court, appreciating the early stage of litigation and the absence of significant discovery, accepted affiant Robert Toerne's sworn statement that additional discovery would allow Big Rivers the opportunity to develop several lines of evidence. Consequently, the Court determined that ruling on ADA's summary judgment motion would "'likely . . . be an abuse of discretion.'" [*Id.* at 14 (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008))]. The conclusion that a conflict exists in the contract documents as to what sorbent was to be used in the DSI System does not mean that Big Rivers necessarily had a colorable basis to draw on the letter of credit. The Court's earlier opinion does not change the Court's conclusion that genuine issues of material fact remain on ADA's warranty claim.

Next, the parties dispute whether their letter of credit through the Bank was clean or documentary. [DN 125 at 31–32; DN 136 at 31–32]. The distinction is important and the official comment to § 4-5-109 explains why. The comment states:

> Whether a beneficiary can commit fraud by presenting a draft under a clean letter of credit (one calling only for a draft and no other documents) has been much debated. Under the current formulation it would be possible but difficult for there to be fraud in such a presentation. If the applicant were able to show that the beneficiary were committing material fraud on the applicant in the underlying transaction, then payment would facilitate a material fraud by the beneficiary on the applicant and honor could be enjoined. The courts should be skeptical of claims of fraud by one who has signed a "suicide" or clean credit and thus granted a beneficiary the right to draw by mere presentation of a draft.

C.R.S. § 4-5-109 cmt. 3. Though it may seem obvious, it is worth stating that to draw on a *clean* letter of credit, a beneficiary must merely demand payment—no documentation, other than perhaps a written demand for payment, is required. BURTON V. MCCULLOGH, LETTERS OF CREDIT, Glossary of Terms. In contrast, to draw on a *documentary* letter of credit, the beneficiary must present the issuing bank with whatever documentation that is called for by the express terms of the credit. JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT §§ GL.01, 2.04. Under Article 5, the term "document" is defined expansively and includes, among other things, a "record, statement, or representation of fact, law, right, or opinion[.]" C.R.S. § 4-5-102(a)(6).

It is necessary to look at the text of the parties' letter of credit to resolve this disagreement. Reading the plain language of the letter of credit reveals that Big Rivers' argument is meritless. The letter of credit between Big Rivers and the Bank stated that the letter of credit would be available to Big Rivers "by presentation of your draft at sight, drawn on Colorado Business Bank, accompanied by the original letter of credit and amendment(s), if any." [DN 20-6 at 2]. The signed written statement to be presented to the Bank expressly required Big Rivers to state that "ADA-ES, Inc. has been notified in writing of our intent to draw under this letter of credit because

15

of ADA-ES, Inc.'s failure to meet the faithful performance of the Contract . . . ." [*Id.*]. In addition, Big Rivers was required to attach a copy of that notification to the draw request. [*Id.* ("A true and correct copy of said notification is attached hereto.")]. The terms of the letter of credit and the written statement language requiring a copy of ADA's notification persuade the Court that the parties' letter of credit was documentary. Thus, Big Rivers' argument—that ADA cannot assert a claim for breach of U.C.C. warranties because the parties negotiated for a clean letter of credit—fails.

Big Rivers' final argument worth discussing is that ADA's exclusive remedy for a breach of U.C.C. warranties claim based on fraud was an injunction, and, because ADA failed to seek an injunction, ADA's post-honor remedies are limited. ADA opposes this point and rightfully so. [DN 136 at 32–34]. Section 5-110 expressly extends the warranties stated therein in cases when the "presentation is honored." In other words, the section presupposes that the issuer has honored the letter of credit. If Big Rivers were correct, the two warranties in § 5-110 would be rendered meaningless.

For the reasons discussed above, Big Rivers' Motion for Summary Judgment as to ADA's Breach of U.C.C. Warranties claim is **DENIED** as to the warranty set forth in § 4-5-110(a)(1).

### 2. Underlying Agreement

Finally, ADA claims that Big Rivers' draw violated the warranty provided for in C.R.S. § 4-5-110(a)(2). [DN 20 ¶ 69]. Specifically, ADA argues that "[t]he Contract between the parties required either explicitly or implicitly that Big Rivers provide ADA-ES an opportunity to conduct a 'root cause investigation' and cure the alleged failure to meet the performance guarantees." [DN 136 at 35]. ADA maintains that "[o]nly if ADA-ES demonstrated an inability or unwillingness to take the corrective action could Big Rivers draw on the letter of credit to secure

16

alternative performance." [*Id.*]. ADA says that "[b]y refusing ADA-ES' reasonable cure of testing the System with [high reactivity hydrated lime] and then drawing on the Letter of Credit by fabricating that ADA-ES had not attempted to cure the alleged defect, Big Rivers breached its U.C.C. warranty that the draw did not violate Big Rivers' obligations to ADA-ES under the Contract." [*Id.*]. Big Rivers, in turn, contends that "[a] review of the relevant documents demonstrates that there were no conditions placed on Big Rivers' draw on the Letter of Credit, rendering meritless ADA's claim that it needed to undertake a 'root-cause' investigation before Big Rivers' drew on the Letter of Credit." [DN 147 at 5].

The official comment to § 5-110(a)(2) explains that it "is a warranty that the beneficiary has performed all the acts expressly and implicitly necessary under any underlying agreement to entitle the beneficiary to honor." C.R.S. § 4-5-110 cmt. 2. Seeking to explain further the warranty, the comment provides a helpful example: "if the underlying contract authorized the beneficiary to draw only upon actual default or upon its or a third party's determination of default by the applicant and if the beneficiary drew in violation of its authorization, then upon honor of its draw the warranty would be breached." *Id.*

The contract documents between ADA and Big Rivers state very little regarding the standby letter of credit. The only reference to the letter of credit in the parties' underlying contract documents is § 3.15 of the RFQ. That section required that ADA, "within 10 business days after Notice to Proceed, submit a letter of credit in the amount of thirty percent (30%) of the contract amount to be held as security for performance." [DN 20-5 at 15]. It further provided that the letter of credit would "remain in effect at least until one year after the date when final payment becomes due, except as otherwise provided by Laws or Regulations or by the Contract Documents." [*Id.*]. The only other reference to a letter of credit is in the Contract's technical specifications. [DN

17

20-2]. The submittal schedule noted only that ADA is supposed to deliver the letter of credit to Big Rivers within 14 days of the issuance of notice to proceed. [*Id.* at 55]. Simplified, the only requirement contained in the underlying documents was that ADA must obtain a letter of credit. The contract documents placed no limit on Big Rivers' ability to draw.

ADA's argument that Big Rivers' draw violated the underlying agreement's requirement of ADA being permitted to conduct a "root cause investigation" is ill-conceived. The cited section—§ 7.5.4—concerns ADA's warranties to Big Rivers. [DN 20-5 at 22]. The provision makes no reference to the letter of credit. Further, the portions of the contract documents that do concern the letter of credit make no mention of a "root cause investigation" being a prerequisite of a proper draw.

The Court finds that Big Rivers is correct, ADA did not identify any contract provision that prohibited the draw. Because no genuine issues of material fact remain, Big Rivers' Motion for Partial Summary Judgment as to ADA's Breach of U.C.C. Warranties claim is **GRANTED** as to the warranty contained in § 4-5-110(a)(2).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [DN 124] is **GRANTED in part** and **DENIED in part** consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 9, 2020

cc: counsel of record