UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00016-JHM

ADA-ES, INC.                                                           PLAINTIFF

V.

BIG RIVERS ELECTRIC
CORPORATION                                                          DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended
Complaint.  [DN 118].  Fully briefed, this matter is ripe for decision.  For the following reasons,
the Plaintiff's motion is **DENIED**.

I.       BACKGROUND

According to the Complaint, Plaintiff ADA-ES, Inc. ("ADA") contracted with Big Rivers
Electric Corporation ("Big Rivers") for the engineering, manufacturing, and delivery of equipment
and materials for a Dry Sorbent Injection System ("DSI System").  [DN 20 ¶ 7].  Pursuant to a
requirement of the Request for Quotes ("RFQ"), ADA posted an irrevocable standby letter of credit
in the amount of $807,651.00 through CoBiz Bank ("Bank") in Denver, Colorado, to serve as
security for performance under the contract.  [*Id.* ¶ 11].  Importantly, the letter of credit, by its
express terms, was governed by Colorado law.  [*Id.* ¶ 5].

In accordance with the contract, ADA engineered, manufactured, and delivered a DSI
System, which was incorporated into a power plant owned by Big Rivers.  [*Id.* ¶ 13].  In March
2016, after the DSI System was installed and the performance test guidelines were finalized, Big
Rivers conducted its first performance test on the DSI System.  [*Id.* ¶ 19].  Big Rivers claimed the
system failed the test by failing to reduce the amount of SO3 emissions to less than five parts per

million (ppm)—the contractually agreed upon reduction—when a specified amount of sorbent was consumed under specified conditions. [*Id.* ¶ 20]. Thereafter, Big Rivers notified ADA of the failed test. ADA responded that "it disagreed with Big Rivers' conclusions about the test, and informed Big Rivers that the way to cure the alleged problem was to use the High Reactivity Hydrated Lime as called for in the Test Procedures and the CleanAir Protocol." [*Id.* ¶ 22]. Big Rivers conducted a second test in June 2016 using a sorbent it claimed satisfied the contract's requirement and informed ADA that the system again failed the performance test. [*Id.* ¶ 23].

Based on the failed performance tests, Big Rivers issued a claim for damages in the amount of $605,458.78, "which constituted its quantification of damages and asserted a right to both actual and liquidated damages for the same alleged performance breach." [*Id.* ¶ 24]. Big Rivers thereafter withheld $563,382.56 of contract payments. Additionally, Big Rivers withdrew the entire $807,651.00 letter of credit funds, using the same basis it used to justify the withheld contract payments. [*Id.* ¶ 27].

On May 11, 2017, ADA filed a first Amended Complaint alleging Fraud (Count I), Unjust Enrichment (Count II), Breach of U.C.C. Warranties (Count IV), Breach of Contract (Count V), and seeking Declaratory Judgment as to seven claims (Count III). [DN 20 ¶¶ 35–77]. According to the scheduling timeline, the deadline for filing amended pleadings was December 21, 2018. [DN 58]. However, on December 6, 2019, ADA moved for leave to amend its complaint and attached its proposed amended complaint. [DN 118; DN 118-9].

Therein, ADA seeks to add two new claims related to the letter of credit—breach of the covenant of good faith and fair dealing and civil theft—as well as a request for attorneys' fees on the already existing claim for breach of contract. [DN 118]. ADA argues that its belated Motion

to Amend is proper because the facts underlying the proposed claims were solely within the possession of Big Rivers until a Rule 30(b)(6) deposition on October 10, 2019.  [*Id.* at 1].

ADA claims that the October 2019 deposition of Big Rivers' designated representative, Mike Pullen, revealed facts that form the basis of both claims.  [*Id.*].  Specifically, ADA points to Mr. Pullen's testimony that Big Rivers had no damages when it drew the entire letter of credit ADA posted as security for performance under the contract.  [*Id.*].  Further, Mr. Pullen testified that Big Rivers used the letter of credit funds to pay its attorneys in the current litigation.  [*Id.*]. ADA claims this testimony is contradictory to Big Rivers' previous position that "it drew on the Letter of Credit 'to help pay for the testing and remediation of the DSI system.'"  [*Id.* at 3 (citing DN 118-3].  Additionally, ADA argues that the amendment is timely based on a recent decision by the Colorado Supreme Court.  [*Id.* at 2].  As to ADA's requested amendment to seek attorneys' fees on its breach of contract claim, ADA contends that the contract provides for such damages and Big Rivers will not be prejudiced by the amendment because it "had already asserted a request for attorneys' fees as part of another claim."  [*Id.* at 3].

Big Rivers, in response, filed a Motion for Partial Summary Judgment on ADA's claims for fraud and breach of U.C.C. warranties—two claims related to the letter of credit asserted in the operative complaint.  [DN 124].  Therein, Big Rivers explained that its opposition to ADA's Motion for Leave to Amend required it to brief the legal and factual issues related to the draw on the letter of credit.  [*Id.* ¶ 7].  That being the case, Big Rivers stated "[t]hat discussion of letter of credit law [would] necessarily show that ADA's fraud and breach of U.C.C. warranties claims fail as a matter of law."  [*Id.* ¶ 9].  Accordingly, Big Rivers sought, and was granted, the right to file a combined memorandum in opposition to ADA's Motion to Amend as well as in support of its independent Motion for Partial Summary Judgment on ADA's pending letter of credit claims.  [DN 156; DN 124; DN 125].

3

Although the Court permitted Big Rivers' arguments regarding the Motion to Amend and Motion for Partial Summary Judgment to be filed together in a single memorandum, the Court addresses these two motions independently as they require the application of different standards of review.

## II.    STANDARD OF REVIEW

A motion for leave to file an amended complaint is governed by FED. R. CIV. P. 15(a)(2) which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  A district court should freely grant a plaintiff leave to amend a pleading "when justice so requires."  FED. R. CIV. P. 15(a)(2).  However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A proposed amendment is "futile" if the new claim could not survive a Rule 12(b)(6) motion to dismiss.  In determining whether a plaintiff has failed to state a claim under FED. R. CIV. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.  Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 663 (quoting Fed. R. Civ. P. 8(a)(2)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III.   DISCUSSION

ADA's proposed amended complaint adds two novel claims as well as a request for attorneys' fees tied to its previously asserted claim for breach of contract.  [DN 118].  Big Rivers' response in opposition to ADA's Motion for Leave to Amend avers that each of these requests should be denied because ADA has no good cause for the untimely and prejudicial amendment and because ADA's proposed amendment is futile.  [DN 125].  The Court addresses each argument in turn.

### A.  Undue Delay

Big Rivers first argues that ADA's Motion should be denied because it lacks good cause for its dilatory filing.  [DN 125 at 20].  Big Rivers contests each of ADA's three grounds for good cause—specifically that: (1) only Big Rivers knew of the potential claims before Mr. Pullen's deposition; (2) only Big Rivers knew of the facts underlying the claims; and (3) new law on civil theft claims allows a claim previously unavailable.  [*Id.*].

"Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).  While courts construe Rule 15(a)(2) liberally, "at some point 'delay will become undue, placing an unwarranted burden on the court, or will become prejudicial,

placing an unfair burden on the opposing party.'" *TIG Ins. Co. v. Hosp. Corp. of Am.*, No. 1:11-CV-00043-JHM, 2014 WL 3118863, at \*7 (W.D. Ky. July 7, 2014) (quoting *Morse*, 290 F.3d at 800 (6th Cir. 2002)) (internal quotations omitted).  "Courts typically find undue delay in cases that are post judgment . . . and in cases where discovery has closed and dispositive motions deadlines have passed."  *Id.* (quoting *Owners Ins. Co. v. Hutsell*, No. 2:12-CV-419-HSM, 2014 WL 2460132, at \*3 (E.D. Tenn. June 2, 2014)).

As to ADA's proposed claim for breach of the covenant of good faith and fair dealing, the Court finds that the facts underlying this new theory of liability are the same as those pleaded in ADA's first amended complaint.  An understanding of what is required to prove a claim for breach of this covenant is necessary to understand the Court's logic.

"Every contract contains an implied duty of good faith and fair dealing."  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo. App. 1994) (citing Restatement (Second) of Contracts § 205 (1981)).  Under the implied covenant of good faith and fair dealing "[e]ach party to a contract has a justified expectation that the other will act in a reasonable manner in its performance."  *Miller v. Bank of New York Mellon*, 379 P.3d 342, 348 (Colo. App. 2016).  The duty applies when "one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time."  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  When one party uses the discretion conferred by the contract "to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached."  *Miller*, 379 P.3d at 348.

In its Motion, ADA argues that Big Rivers had discretionary authority to determine how much of the credit would be drawn.  [DN 118 at 12].  In particular, ADA maintains that because the parties negotiated to allow partial draws on the letter of credit, Big Rivers was only to draw an

amount equal to the amount of damages it incurred.  [*Id.*].  ADA alleges that the covenant was breached when Big Rivers drew the entire letter of credit without sustaining any damages.  [*Id.*]. However, ADA already alleged these facts in its first amended complaint when it stated that "Big Rivers did not and could not show any actual damages or liquidated damages that could support a draw in the amount it unlawfully withdrew for its immediate possession[.]"  [DN 20 ¶ 32].  In its claim for fraud, ADA alleged that Big River's "draw on the Letter of Credit Funds far exceeded any amount of damages Big Rivers had ever asserted, or even ascertained, at the time."  [*Id.* ¶ 41].

Based on a close review of the factual allegations contained in the operative complaint, ADA's arguments regarding why it ought to be granted leave to amend, as well as the allegations required to prove such a claim, it is clear that this theory of liability was available to ADA years ago.  The claim could have—and should have—been raised, if at all, by ADA in its first amended complaint.  Rule 15(a) mandates more of a showing than ADA presented here.  ADA presents no new facts in support of its good faith claim.  Instead, ADA reformulates previously known facts to support this new theory of recovery.  Notably, as mentioned above, the deadline to file amended pleadings was December 21, 2018.  [DN 58].  ADA cannot show good cause for why this amendment should be allowed nearly a year after the deadline for such amendments passed.

Because ADA could have asserted this good faith claim when it filed its first amended complaint nearly three years ago and permitting such an amendment now would create needless delay, the request to add this claim is **DENIED**.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (denial proper "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally"); *see also In re Quality Communs., Inc.*, No. 02-34929, 2006 WL 859367, at *1–2 (Bankr. W.D. Ky. Mar. 29, 2006).

Similarly, as to ADA's request to seek attorneys' fees under § 7.19 of the conformed contract request for quotations, Big Rivers argues the request should be dismissed as untimely because "ADA clearly was aware of the contractual fee provisions before it filed suit."  [DN 125 at 25 n.67].  ADA's operative complaint already seeks attorneys' fees, though the requested relief concerns fees authorized by statute—in other words, ADA previously sought attorneys' fees only related to its statutory U.C.C. claim.  [DN 20 at 13].  ADA counters that because it "had already asserted a request for attorneys' fees as part of another claim," Big Rivers would not be prejudiced by such an amendment.  [DN 118 at 3].  The Court finds no merit in ADA's argument.

As with its request to add a claim for breach of the covenant of good faith and fair dealing, ADA had all the information necessary in May 2017 to request attorneys' fees on its breach of contract claim.  ADA does not even attempt to argue that this claim is based on newly discovered information.  Instead, ADA justifies the request by stating that it already seeks attorneys' fees on another claim.  So, what is the big deal?  Under Rule 15(a), courts are to permit amendments where justice so requires. This involves balancing the proffered reasons for the delay against potential prejudice to the other party.  ADA failed to seek attorneys' fees on the breach of contract claim despite having the information necessary to do so.  *See Lynch v. Sease*, No. 6:03-479-DCR, 2006 WL 1206472, at *2–3 (E.D. Ky. May 2, 2006) (explaining that Rule 54(d)(2)—the rule concerning attorneys' fees sought post-judgment—does not "'apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury'") (quoting FED. R. CIV. P. 54(d)(2) advisory committee's note to 1993 amendment).  Now, two and a half years after its first amended complaint was filed and a year after the deadline to file amended pleadings, ADA seeks to add a request for attorneys' fees because it has already sought attorney's fees on a different claim.  Big

Rivers contends it will be prejudiced because it "evaluated its risk in this case based solely on the statutory U.C.C. warranty claim for fees. . . . Adding a contractual claim for fees at this late stage is prejudicial and may require the retaking of depositions." [DN 125 at 25 n.67]. The Court is persuaded that this potential prejudice to Big Rivers outweighs the typical direction that amendments be liberally allowed under Rule 15(a). ADA's request to seek attorneys' fees related to its breach of contract claim is **DENIED**

This reasoning does not apply equally to ADA's request to add a claim for civil theft. Setting aside ADA's arguments that the facts supporting this claim were solely within the purview of Big Rivers, a recent Colorado Supreme Court decision permits ADA's belated amendment. ADA maintains that prior to May 2019, the law on civil theft in Colorado was unsettled. [DN 118 at 2]. Big Rivers responds that ADA misconstrues the state of the law regarding civil theft. [DN 125 at 24]. Specifically, Big Rivers argues that the Colorado Supreme Court decision upon which ADA relies merely affirmed the Colorado Court of Appeals' February 2017 decision—with both cases holding that the economic loss rule does not bar a claim under Colorado's civil theft statute. Thus, Big Rivers argues, the February 2017 appellate court decision was the law in Colorado before ADA even filed suit. [*Id.*]. A look at the case—*Bermel v. Blue Radios, Inc.*—proves Big Rivers' position untenable. 440 P.3d 1150 (Colo. 2019).

In *Bermel*, the Colorado Supreme Court considered whether the economic loss rule barred the statutory cause of action for civil theft. *Id.* at 1153. The economic loss rule states that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1154 (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)) (internal quotation marks omitted). In reaching its decision, the Colorado Supreme Court took careful note of the

split of authority on this very issue. *Id.* at 1155 ("This court has not previously considered whether the economic loss rule bars a cause of action for civil theft under the rights in stolen property statute. However, three divisions of the court of appeals have grappled with that question and arrived at different conclusions.") (internal citation omitted). In 2008, the first court of appeals division to consider the question concluded that the rule did not bar the statutory claim, but the court's holding was limited to the facts before it. *Id.* (citing *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186 (Colo. App. 2008)). The next year, a different division of the court of appeals rejected the idea that the economic loss rule could not prohibit a claim for civil theft, though it again relied heavily on the facts of the case in reaching the decision. *Id.* (citing *Makoto USA, Inc. v. Russell*, 250 P.3d 625 (Colo. App. 2009)). Finally, in a split with the *Makoto* division, the appellate division in *Bermel* held that "as a matter of law, the judge-made economic loss rule 'cannot preclude a claim under the civil theft statute because the legislature explicitly provided that cause of action, and its attendant remedy, to victims of theft.'" *Id.* at 1156 (quoting *Bermel v. BlueRadios, Inc*., 442 P.3d 923, 926 (Colo. App. 2017). The Colorado Supreme Court found that the *Makoto* division overstepped and concluded that the economic loss rule does not bar statutory claims for civil theft.

While the Court understands Big Rivers' argument that the law was settled by the February 2017 holding in *Bermel*, a full appreciation of the split in authority makes clear that the answer to whether civil theft claims were barred by the economic loss rule was, at the very least, in doubt. As further support of the unsettled nature, it is worth noting that the petition for writ of certiorari to the Colorado Supreme Court was filed before ADA's first amended complaint. *See* Brief for Petitioner, *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150 (Colo. 2019) (No. 17-SC-246). Because the state of the law was unsettled, ADA's proposed amended claim is not untimely.

### B. Undue Prejudice

Next, Big Rivers argues that ADA's belated motion would cause it undue prejudice.  Big Rivers points to the fact that discovery in the case is nearly complete and argues that allowing ADA's amended complaint would impair Big Rivers' ability to defend itself against the new allegations and would require re-deposing previously deposed witnesses. [DN 125 at 24–25].  Further, Big Rivers states that granting ADA's motion would force Big Rivers to incur additional costs and would cause it further reputational damage.  [*Id.* at 24].

Examples of prejudice include "insufficient time to conduct discovery," being "unfairly surprised by the change in theories," or otherwise showing an inability to now "rebut the plaintiff's new theory." *Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  Big Rivers fails to effectively argue any example of prejudice comparable to those found sufficient to deny a motion to amend by the Sixth Circuit.  In fact, Big Rivers admits that ADA previously raised the possibility of bringing a civil theft claim [DN 125 at 2]—this fact works against any argument that Big Rivers is unfairly surprised by the possibility of having to defend against this new theory.  This being the case, the Court finds Big Rivers will not be unduly prejudiced by the addition of a civil theft claim.

### C. Futility

Finally, as support for denial of the Motion for Leave to Amend, Big Rivers argues that the amendment of the counterclaim is futile.  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (internal citations omitted).  Accordingly, the aforementioned standard of review is applicable to this challenge.

ADA proposes a claim for civil theft related to Big Rivers' draw on the letter of credit. [DN 118; DN 118-9 ¶¶ 86–92]. ADA's proposed amended complaint alleges that Big Rivers obtained the funds without authorization by misrepresenting its purported damages to ADA and the Bank. [DN 118-9 ¶ 88]. Specifically, ADA claims that "[a]t the time Big Rivers drew on the Letter of Credit, it knew that it had not incurred any damages and knew that it would use the funds to pay its attorneys in future litigation." [*Id.* ¶ 89]. Big Rivers responds arguing that the amendment ought to be denied as futile because its draw on the letter of credit was proper as a matter of law—in other words, Big Rivers argues it did not take ADA's funds "without authorization." [DN 125 at 26].

Colorado law recognizes a private right of action for civil theft. C.R.S. § 18-4-405. To succeed on a claim for civil theft, ADA must prove that Big Rivers (1) knowingly obtained control over ADA's property without authorization or by threat or deception and (2) did so with the intent to permanently deprive ADA of the use or benefit of the property. C.R.S. § 18-4-401(1). Big Rivers hinges its opposition to this amendment on the phrase "without authorization" and argues that because its draw on the letter of credit was proper, it did not obtain control over the funds without authorization. Logically then, the issue here is whether, when Big Rivers drew the funds without having incurred damages, this was an unauthorized draw on the letter of credit. The answer is no.

Big Rivers argues at length that whether it had incurred damages when it drew on the letter of credit is irrelevant to whether its draw was authorized. [DN 125 at 33]. After an extensive review of the case law concerning letters of credit, the Court agrees. The Colorado Supreme Court in *Colorado Nat'l Bank v. Board of Cty. Comm'rs*, reviewed at length the history and law concerning letters of credit. 634 P.2d 32, 36–40 (Colo. 1981). Therein, the court explained the

obligation of a bank when a beneficiary begins the process of drawing on a letter of credit. *Id.* at 38–39. Importantly, the court noted that "the question of whether the beneficiary of the letter of credit has suffered any damage by the failure of the bank's customer to perform as agreed is of no concern." *Id.* at 39 (citing *Mid-States Mortg. Corp. v. Nat'l Bank of Southfield,* 259 N.W.2d 175 (Mich. 1977)). ADA cites to no authority which supports a contrary position.

The other possibility for ADA's claim that the draw was without authorization is if the language controlling the letter of credit contained some reference to a required showing of damages. Fatal to ADA's argument, the documents controlling the letter of credit included no such conditional language. Indeed, ADA admits that the only condition on Big Rivers' draw was a requirement that Big Rivers submit a signed written statement addressed to the Bank stating:

> ADA-ES, Inc. has been notified in writing of our intent to draw under this letter of credit because of ADA-ES, Inc.'s failure to meet the faithful performance of the Contract, Purchase Order No.: 230401 (Dated 02/18/2015), for the Engineering, Manufacturing and delivery of equipment and materials as per conformed Contract # 79682 and RFQ #WL14053 (collectively the "Contract") and have been provided reasonable opportunity to cure, ADA-ES, Inc. has failed to fulfill its obligations under that certain Contract. A true and correct copy of said notification is attached hereto.

[DN 118-9 ¶ 24; DN 20-6]. This language contains no reference whatsoever to damages and ADA cites no other contractual documents which placed the onus on Big Rivers to make an affirmative statement regarding its damages when drawing on the letter of credit. The Court can find no other basis upon which Big Rivers' alleged misrepresentation regarding its damages would render its draw to be "without authorization."

For the first time in its Reply in Support of its Motion to Amend, ADA alleges that Big Rivers obtained the letter of credit funds "without authorization" by making the "materially false statement in the draw request . . . that ADA-ES 'had been provided reasonable opportunity to cure.'" [DN 131 at 5]. While ADA did allege in its proposed amended complaint—as well as the

currently operative complaint—that Big Rivers made the materially false statements to the Bank that ADA breached the contract and was given a reasonable opportunity to cure, those allegations pertain to ADA's claims for fraud and breach of U.C.C. warranties.  [DN 20 ¶¶ 35–44, 67–70; DN 118-9 ¶¶ 35–44; 68–71].  Looking at the plain language of ADA's proposed amended claim for civil theft, it is clear that the argument is based on Big Rivers' alleged misrepresentation of its damages to the Bank.  [DN 118-9 ¶¶ 86–92].  This is made all the more evident by looking at ADA's differing recitations of the prongs to prove a civil theft claim.  In its Motion for Leave to Amend, ADA states that to succeed on a civil theft claim, a plaintiff must establish that "(1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property."  [DN 118 at 9–10].  In its Reply, in an effort to change the direction of its argument, ADA expands this standard.  [DN 131 at 9].  ADA states that to establish a civil theft claim, "a plaintiff must allege that the defendant 'knowingly obtain[ed] control over . . . [the plaintiff's property] without authorization *or by threat or deception*' and it did so with the specific 'intent to deprive [the plaintiff] . . . permanently of the use or the benefit' of the property."  [*Id.*].  While a correct recital of the legal standard, the change evinces ADA's attempt to alter the basis for its civil theft claim.

Unfortunately for ADA, it is well established that a moving party may not raise a new issue for the first time in its reply brief.  *See Keys v. Dart Container Corp.*, No. 1:08-CV-00138-JHM, 2012 WL 2681461, at *6–7 (W.D. Ky. July 6, 2012); *see also Shelby Cnty., Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 372 n.7 (6th Cir. 2009).  Accordingly, the Court finds ADA waived its argument—that Big Rivers' draw on the letter of credit was done "without authorization" based on the alleged materially false statement that ADA was provided a reasonable opportunity to cure—as to this motion.

14

The Court finds that ADA failed to properly state a plausible civil theft claim.  Thus, ADA's Motion to Amend as to this claim is **DENIED**.

**IV.    CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend [DN 118] is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 9, 2020

cc: counsel of record